HERNDON *et al.*, Plaintiffs in Error, v. HERNDON'S ADMINIS-TRATORS, Defendants in Error.

1. On the death of a husband without children, the increase of a female slave, that came to the husband in right of the marriage, remaining undisposed of at his death, passed, under the dower act of 1845 (R. C. 1845, p. 430, § 3), with the mother to the widow.

*Error to Monroe Circuit Court.*

The facts sufficiently appear in the opinion of the court.

*Dryden* and *McVagh & Brace*, for plaintiffs in error.

I. The language of the dower act does not embrace the increase of a female slave after it comes to the husband. (3 Mo. 98.)

*Howell*, for respondent.

NAPTON, Judge, delivered the opinion of the court.

The only question in this case is, whether under our dower law, (R. C. 1845, 430, § 3,) on the death of the husband without children, the increase of the slaves that come to the husband by the wife, remaining undisposed of at his death, go with the mother to the widow. This question was determined affirmatively by this court in the case of Cotton and

Cotton's administrator at the January term, 1851; though, from some cause not now known, no opinion is to be found on file in the case. Our conclusion in the present case is the same. It is conceded that a strict and literal interpretation of this section of our law might exclude the increase; for, as the husband is the absolute owner of the mother, the increase may be said to become his by reason of such ownership and not by virtue of the marriage. But indirectly they do come to him by virtue of the marriage, and the construction which gives to the widow the increase along with the mother is more accordant with the general policy of our law.

In this state, and indeed in most of the slave states, the issue of a female slave follows the condition of the mother; and if during a tenancy for life the mother has children, they go with the mother to the person who has the remainder or reversion. A difference has thus been adopted between slaves and other property, founded upon motives of humanity and having regard to the moral as well as legal relations between master and slave. This distinction is so well understood, not merely by the profession, but so generally recognized and acted on by the community at large, that it is no violent presumption to suppose that the legislature intended, by the general terms which they have used in the dower law, to embrace the increase of slaves, as well as the slaves themselves, as property coming by the marriage.

The other judges concurring, the judgment is affirmed.